7IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 1:25-cv-01650-NYW-NRN

HOLLEE WELTY,
SCOTT WELTY,
MATTHEW J. WILCOXSON, and
CHRISTINA LYNN DUKE WILCOXSON,

      Plaintiffs/Counterclaim Defendants,

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,
FEDERAL WARRANTY SERVICE CORPORATION, and
HOMEFIRST AGENCY, INC.,

      Defendants/Counterclaim Plaintiffs.

_____

## ORDER DENYING MOTION TO COMPEL ARBITRATION
_____

This matter is before the Court on Defendants' Motion to Compel Arbitration [Doc. 42, filed February 12, 2026].  Plaintiffs responded, [Doc. 46, filed March 12, 2026], and Defendants replied, [Doc. 54, filed April 2, 2026].  Upon review of the Parties' briefing, the applicable case law, and the entire docket, this Court finds that oral argument will not materially assist in the resolution of the case.  For the reasons set forth herein, the Court respectfully **DENIES** the Motion to Compel Arbitration.

## BACKGROUND

Plaintiffs Hollee Welty ("Ms. Welty") and Scott Welty ("Mr. Welty," and with Ms. Welty, "the Weltys") own and reside in a manufactured home located at 15109 County Road 114, Nunn, Colorado 80649.  [Doc. 8 at ¶ 1].  The Weltys purchased their home on or about May 6, 2022, and insured their home with Defendant American Bankers

Insurance Company of Florida ("American Insurance") under Specialty Homeowners Program Policy Number HFP0315495 (the "Welty Policy"). [*Id.* at ¶¶ 9–10]. They also purchased Home Protection Plan Number 0251736 (the "Welty Plan") from Defendant Federal Warranty Service Corporation ("Federal Warranty"). [*Id.* at ¶ 11].

Plaintiffs Matthew J. Wilcoxson ("Mr. Wilcoxson") and Christina Lynn Duke Wilcoxson ("Ms. Wilcoxson" and with Mr. Wilcoxson, "the Wilcoxsons") (collectively, with the Weltys, "Plaintiffs" or "Homeowners") own and reside at a manufactured home located at 15119 County Road 114, Nunn, Colorado 80649. [*Id.* at ¶ 2]. The Wilcoxsons insured their home with American Insurance under Specialty Homeowners Policy Number HFP031762 (the "Wilcoxson Policy") and purchased Home Protection Plan Number 0254425 (the "Wilcoxson Plan") from Federal Warranty. [*Id*. at ¶¶ 13–14]. Each of the Policies and Plans held by Plaintiffs are underwritten by American Insurance. [*Id.* at ¶ 15].

On or about December 21, 2022, a multi-day storm event (the "December 21 Storm") resulted in water intrusion into the Welty and Wilcoxson's homes through their roofs, walls, windows, and doors, causing the Weltys and Wilcoxsons to vacate their homes pursuant to the instruction of emergency personnel. [*Id.* at ¶¶ 19–22]. The Weltys and Wilcoxsons then tendered claims to American Insurance for their losses associated with the December 21 Storm under the Welty and Wilcoxson Policies and Plans. [*Id.* at ¶¶ 26, 29]. Defendant Homefirst Agency, Inc. ("HomeFirst") acted as the third-party adjuster for Plaintiffs' claims. [*Id.* at ¶¶ 24–25].

Eventually, Defendants denied Plaintiffs' respective claims under their Policies and Plans. [*Id.* at ¶¶ 53–54]. On or about May 12, 2023, HomeFirst made offers to compromise Plaintiffs' claims in exchange for complete releases. [*Id.* at ¶ 55]. The Parties

have been unable to reach resolution with respect to Plaintiffs' claims under their Policies and Plans.

Plaintiffs initiated this action on December 23, 2024 in the Colorado District Court for Weld County, Colorado, asserting causes of action for (1) breach of contract; (2) bad faith in violation of Colo. Rev. Stat. § 10-3-1115; and (3) common law bad faith. [Doc. 8]. Defendants have moved to compel arbitration based on an arbitration provision contained in a separate addendum to Plaintiffs' Policies and Plans. [Doc. 42 at 3]. The arbitration provision in the Policies provides, in pertinent part:

> Any and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise), including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable claims) arising out of, relating to, or in connection with (1) this Policy or Certificate or any prior Policy or Certificate issued by Us to You, (2) Any credit, loan or purchase transaction in connection with which this Policy or Certificate or any prior Policy or Certificate was issued by Us to You, or (3) the validity, scope, interpretation, or enforceability of this Provision or of the entire Policy or Certificate ("Claim"), shall be resolved by binding arbitration before a single arbitrator.

[Doc. 42 at 3; Doc. 42-1 at 2; Doc. 42-3 at 2]. The Welty and Wilcoxson Plans also contain an arbitration provision (collectively with the arbitration provision in the Policies, "Arbitration Provisions") that states:

> YOU AGREE AND UNDERSTAND THAT this arbitration provision means that You give up Your right to go to court on any claim covered by this provision. You also agree that any arbitration proceeding will only consider Your Claims. Claims by, or on behalf of, other individuals will not be arbitrated in any proceeding that is considering Your Claims.

[Doc. 42 at 4; Doc. 42-2 at 2–4; Doc. 42-4 at 2, 3].

Plaintiffs do not dispute that their Policies and Plans each contain Arbitration Provisions. [Doc. 46 at 2]. But they do dispute that such arbitration provisions are enforceable. [*Id.* at 3]. First, Plaintiffs contend they were not provided, and were unaware

of, the Arbitration Provisions until *after* contracting for the Policies and Plans.  [*Id.*].

Second, Plaintiffs argue that there is no evidence these Plaintiffs executed any

agreements to arbitration with these Defendants, and in particular, a complete lack of

evidence regarding any agreement involving Ms. Welty and Ms. Wilcoxson or Plaintiffs

and HomeFirst.  [*Id.* at 6–7].  Third, Plaintiffs contend that Defendants have waived any

right to arbitrate by participating in litigation for over a year.  [*Id.* at 8].  Fourth, Plaintiffs

urge this Court to find the Arbitration Provisions contained in the Policies and Plans in

violation of Colorado law and public policy.  [*Id.*at 11].

On Reply, Defendants insist that Plaintiffs should be bound to the Arbitration

Provisions in the Policies and Plans that they received shortly after purchase.  [Doc. 54].

First, Defendants argue that Plaintiffs cannot simultaneously disclaim the Arbitration

Provisions while seeking to enforce other contractual obligations, which demonstrates

their implied assent to all contractual terms.  [*Id.* at 1–3].  Next, Defendants distinguish

*Bojorquez v. American Bankers Insurance Company of Florida*, No. 23-cv-03164-PAB-

SBP, 2024 WL 4277910 (D. Colo. Sept. 24, 2024) by arguing that there, there were

unrebutted declarations supporting the complete omission of delivery of an arbitration

provision prior to or during their contracting.  [*Id.* at 4].  Defendants also counter Plaintiffs'

assertion that they waived their right to arbitrate by participating in this litigation.  [*Id.* at

6–10].  Finally, Defendants challenge Plaintiffs' reading of Colorado law.  [*Id.* at 10].

## LEGAL STANDARD

"There is a strong federal policy favoring arbitration for dispute resolution, and this

policy 'requires a liberal reading of arbitration agreements.'"  *GATX Mgmt. Servs., LLC v.*

*Weakland*, 171 F. Supp. 2d 1159, 1162 (D. Colo. 2001) (quoting *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n.27 (1983)).  The Federal Arbitration Act ("FAA") provides that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 of the FAA obligates courts to stay litigation on matters that the parties have agreed to arbitrate, while Section 4 authorizes a federal district court to compel arbitration for a dispute over which it would have jurisdiction.  *See* 9 U.S.C. §§ 3, 4.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

But because "arbitration is a matter of contract," the Court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quotation omitted).  "Although the Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements . . . the question whether parties have a valid arbitration agreement at all is a gateway matter that is presumptively for courts to decide."  *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 611 (10th Cir. 2014) (cleaned up); *see also Brayman v. KeyPoint Gov't Sols., Inc*., 83 F.4th 823, 832 (10th Cir. 2023) ("A court addressing a motion to compel arbitration therefore must first determine whether there exists an enforceable agreement to arbitrate.").  And "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made by the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."  *Vernon v. Qwest Comms. Int'l, Inc*., 857 F. Supp.

2d 1135, 1149 (D. Colo. 2012) (quotation omitted), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013).  Indeed, the general presumption favoring arbitration falls away when the parties dispute whether there is a valid and enforceable arbitration agreement.[1]  *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).  In this circumstance, courts apply a standard "similar to summary judgment practice."  *Bellman*, 563 F. App'x at 612.

## ANALYSIS

The Court's sole inquiry asks whether the Parties entered into a valid agreement to arbitrate.  *Brayman*, 83 F.4th at 832.  Whether a valid agreement to arbitrate exists "is simply a matter of contract between the parties."  *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (quotation omitted).  Accordingly, courts apply "ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute."  *Id.* (quotation omitted).

Because Plaintiffs do not contest that Colorado law applies here, *compare* [Doc. 46] *with* [Doc. 42 at 6], the Court proceeds accordingly, *see Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").  "To be enforceable, a contract requires mutual assent to an exchange between competent parties for legal consideration."  *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022).  "Under Colorado law, a contract requires a 'meeting of the minds.'"  *Bellman*, 563 F. App'x at 613.

---

[1] The second step of the Court's inquiry typically involves determining whether the allegations in the Complaint are within the scope of the arbitration agreement.  *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir. 2018).  But here, Plaintiffs do not challenge the existence or scope of the arbitration provisions.  *See* [Doc. 46].

"The requisite meeting of the minds is established by the parties' acts, conduct, and words, along with the attendant circumstances, and not by any subjective, unexpressed intent by either party." *French*, 509 P.3d at 449; *see also Leica Geosystems, Inc. v. L.W.S. Leasing, Inc.*, 872 F. Supp. 2d 1191, 1198 (D. Colo. 2012) ("An offer and assent may be manifested by acts or conduct creating a contract."). As the parties seeking to compel arbitration, Defendants bear the burden of establishing that the matter is an issue subject to arbitration. *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

## I.    It is Undisputed that Plaintiffs Had No Notice Prior or During Contracting.

As an initial matter, it is unchallenged at this juncture that Plaintiffs had no notice of the Arbitration Provisions in the Policies and Plans prior to, or at the time of, purchasing the Policies and Plans. *Compare* [Doc. 46 at 3–6; Doc. 46-1; Doc. 46-2; Doc. 46-3; Doc. 46-4] *with* [Doc. 54 at 3–5]. Both Mr. Welty and Mr. Wilcoxson attest that they were only provided copies of the Policies and Plans after purchasing them, and did not see a full copy prior to finalizing the purchase. [Doc. 46-1 at ¶¶ 5–6, 9–11; Doc. 46-2 at ¶¶ 4–6, 9–11]. Both Mr. Welty and Mr. Wilcoxson disclaim any knowledge of the Arbitration Provisions prior to purchasing the Policies and Plans. [Doc. 46-1 at ¶¶ 7, 12; Doc. 46-2 at ¶¶ 7, 12]. Defendants provide no evidence to contradict these assertions. *See* [Doc. 54; Doc. 54-1; Doc. 54-2]. Nevertheless, Defendants argue that Plaintiffs' consent to the Arbitration Provisions can be implied because they provided Plaintiffs copies of Policies and Plans after their issuance. [Doc. 54 at 2]. This Court respectfully disagrees for the following reasons.

7

## II.    Defendants' Legal Authority is Unavailing.

This Court is puzzled by Defendants' reliance on *Grosvenor v. Qwest Commc'ns Int'l, Inc.*, No. 09-cv-02848-WDM-KMT, 2010 WL 3906253, at *9 (D. Colo. Sept. 30, 2010). [Doc. 54 at 3]. In *Grosvenor*, the Honorable Walker D. Miller denied the defendant's motion to compel arbitration because the plaintiff had raised material questions of fact as to contract formation. *Id.* at *10. Nowhere in *Grosvenor* does the court suggest that an arbitration provision may be enforceable based solely on unilateral, post-contractual conduct. Rather, even in the face of both a click-wrap agreement and a welcome letter that included an arbitration clause, the *Grosvenor* court concluded that genuine issues of fact as to whether the plaintiff agreed to arbitrate his claims precluded a ruling as a matter of law.[2]  *See id.* at *10.

Second, Defendants' citation to *Vernon v. Qwest Commc'ns Int'l, Inc.,* 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013), fares no better. Contrary to Defendants' argument, *Vernon* also does not stand for the proposition that "reasonable notice" of an arbitration provision can be inferred solely from unilateral, post-purchase conduct. *See* [Doc. 54 at 2–3]. Instead, the *Vernon* court (both in the Magistrate Judge's Order and through the District Judge's adoption of the Order) focused on this "threshold issue": "did the consumer have reasonable notice, either actual or

---

[2] At summary judgment, the Honorable Marcia S. Krieger concluded that the plaintiff's conduct manifested assent to the contractual terms because the terms were reasonably conspicuous as to permit a reasonable user an opportunity to review them and either agree to them or cancel the service, and the installation software conspicuously warned users of the existence of contractual terms, specifically mentioning the arbitration clause. *See Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1030 (D. Colo. 2012). But Judge Krieger then went on to conclude that the arbitration agreement was illusory and unenforceable, because the defendant could unilaterally alter the terms without allowing plaintiff to reject it. *Id.* at 1034.

constructive, of the terms of the putative agreement and did the consumer manifest assent to those terms?"  *Vernon*, 857 F. Supp. 3d at 1149; *Vernon*, 925 F. Supp. 2d at 1190–91.  This principle that parties to a contract must have notice prior to or during the contracting process to appropriately manifest consent was recognized by the *Vernon* court.  *See Smith v. Aliera Cos.*, 534 F. Supp. 3d 1345, 1359 (D. Colo. 2021) (observing that "[t]he key differences between *Vernon* and this case are that the *Vernon* plaintiffs were on notice of the Subscriber Agreement and its arbitration clause *before* they entered into the contract with [defendant], and that they were explicitly informed they were bound by all its terms *before* agreeing" (emphasis added)).

Third, Defendants' argument that Plaintiffs cannot challenge the enforceability of Arbitration Provisions while seeking to enforce Defendants' contractual obligations and duties under the Policies and Plans is not only unsupported by any citation to legal authority within the Reply itself, [Doc. 54 at 4], but also is unsupported by Colorado law, the record, and common sense.  "Generally, arbitration clauses are severable from contracts." *Shams v. Howard*, 165 P.3d 876, 879 (Colo. App. 2007).  Although Defendants have not provided the Court a full copy of either the Policies or Plans, the contractual terms of the Arbitration Provisions provide, in pertinent part:

> If any portion of this Arbitration Provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of the Arbitration Provision . . .

[Doc. 42-1 at 2; Doc. 42-3 at 2], and:

> If any portion of this Arbitration Provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of the Arbitration Provision.

[Doc. 42-2 at 2; Doc. 42-4 at 2].  In light of this language, the Court cannot conclude that Defendants have carried their burden of establishing that the enforceability of the remainder of the Policies and Plans is dependent upon the enforceability of the Arbitration Provisions.  Indeed, to hold otherwise would disincentivize a party (who most likely had no role in the drafting of the contract) from challenging an arbitration clause out of fear that the invalidation of such clause would invalidate the entirety of the contract.

### III.     Genuine Issues of Material Fact Preclude Enforcement of Arbitration Provisions.

Here, genuine issues of material fact preclude finding assent on the part of Plaintiffs as a matter of law.  Mr. Welty purchased the Welty Policy on May 6, 2022 and Mr. Wilcoxson purchased the Wilcoxson Policy on July 5, 2022.  [Doc. 46-1 at ¶ 4; Doc. 46-2 at ¶ 4].  But Defendants point to no evidence as to *when* those Policies were provided to Mr. Welty and Mr. Wilcoxson, or *what* either of them did to manifest their intent to be bound by the Arbitration Provisions. Indeed, the exhibits attached to the Reply indicate that HomeFirst sent letters enclosing a copy of the "Home Protection Plan," but make no mention of the *Policies* at all.  *See* [Doc. 54-1; Doc. 54-2].  Even with respect to the Plans, there is no notice of the Arbitration Provisions on the face of the letters themselves, nor what "Home Protection Plan" was included with the letter.  *See* [Doc. 54-1; Doc. 54-2].

There is also no evidence in the record that any Plaintiff was advised of the Arbitration Provisions before they applied for and purchased the Policies and Plans, through actual notice or through a website containing the future terms of the Policies and Plans.  *Cf. Vernon*, 925 F. Supp. 3d at 1191 (observing that plaintiffs were advised of the terms and conditions of the contract, including an arbitration clause, at each stage of the

enrollment process, including but not solely limited to the post-contractual welcome letter). The applications for the Policies and Plans make no mention of the Arbitration Provisions nor do they point to their availability through other means, such as a website. *See* [Doc. 46-3; Doc. 46-4; Doc. 46-5; Doc. 46-6]. Nor do the subsequent letters identify the Arbitration Provisions or, unlike the welcome letters in *Grosvenor* or *Vernon*, direct Plaintiffs to review such Arbitration Provisions and cancel their Plans (or Policies) if they do not agree. *Compare Vernon,* 825 F. Supp. 3d at 1146 *and Vernon*, 925 F. Supp. 3d at 1191 *with* [Doc. 54-1; Doc. 54-2]. With respect to Ms. Welty and Ms. Wilcoxson, each individual attests that she was not aware of the Arbitration Provisions at the time that her husband filled out applications for the Policies and Plans, and not until after Defendants filed their Motion to Compel Arbitration. [Doc. 46-7 at ¶¶ 4–5; Doc. 46-8 at ¶¶ 4–5]. And while Defendants argue that Plaintiffs could have canceled their Policies and Plans (and Plaintiffs do not contend otherwise), *see* [Doc. 54 at 5 & n.2], it is Defendants' burden to establish that all Parties are bound to the Arbitration Provisions—not Plaintiffs to disprove.

Without such facts, this Court cannot conclude, unlike the *Vernon* court, *see Vernon*, 925 F. Supp. 3d at 1191, that Defendants have carried their burden to demonstrate that Plaintiffs had a reasonable opportunity to access the Policies and Plans—and the Arbitration Provisions included therein—had they wished to do so. And without notice or access, this Court also cannot conclude that Plaintiffs—including but not limited to two Plaintiffs who were not involved in the contractual process at all, *see* [Doc. 46-7; Doc. 46-8]—are separately bound by the Arbitration Provisions.[3]

---

[3] Because the Court finds that, at this juncture, there exist genuine issues of material fact as to whether Mr. Welty and Mr. Wilcoxson received actual or constructive notice of the Arbitration Provisions before or at the time of contracting, the Court need not reach

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that

(1)     Defendants' Motion to Compel Arbitration [Doc. 42] is **DENIED**; and

(2)     All deadlines **REMAIN SET**.

DATED:  July 1, 2026                                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

Plaintiffs' additional arguments including but not limited to whether Ms. Welty and Ms. Wilcoxson, as non-signatories to the applications for the Policies and Plans but insureds to the Policies and Plans, *see generally* [Doc. 1], may be bound to the Arbitration Provisions.  *See* [Doc. 46].  The Court notes, however, that "[u]nder Colorado law, both signatory and nonsignatory parties may be bound by an arbitration agreement if so dictated by ordinary principles of contract law." *Santich v. VCG Holding Corp.*, No. 17-cv-00631-RM-MEH, 2018 WL 3968879, at *11 (D. Colo. Aug. 20, 2018) (quotation omitted), *certified question answered,* 2019 CO 67, 443 P.3d 62, *and supplemented*, 2020 WL 1529182 (D. Colo. Mar. 30, 2020).  A non-party, such as a third-party beneficiary, may fall within the scope of an arbitration agreement so long as the intent of the parties is apparent from the terms of the agreement, the surrounding circumstances, or both. *Cross v. Amazon.com, Inc.*, No. 23-cv-02099-NYW-SBP, 2024 WL 4346414, at *4 (D. Colo. Sept. 30, 2024) (citing *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994)).